Elmer DAVIS, Regional Director for the Sixteenth Region of the National Labor Relations Board, for and on Behalf of the **NATIONAL LABOR RELATIONS BOARD,** Petitioner,

v.

**SERVIS EQUIPMENT COMPANY,** Respondent.

Civ. A. No. 3-5586-B.

United States District Court, N. D. Texas, Dallas Division.

March 31, 1972.

**1300**

Robert L. Penrice, General Counsel, National Labor Relations Board, Fort Worth, Tex., for plaintiff.

John Edward Price, Fort Worth, Tex., for respondent.

## JUDGMENT

HUGHES, District Judge.

Elmer Davis, Regional Director of the Sixteenth Region of the National Labor Relations Board (hereinafter called the Board) brought this action against Servis Equipment Company (hereinafter called Company) for an injunction under Section 10(j) of the National Labor Relations Act, as amended, in aid of an alleged unfair labor practice proceeding pending before the Board.

Hearing was before the Court and after consideration of the pleadings, the evidence, argument of counsel and the briefs of the parties the Court makes the following:

### Findings of Fact

1. The Petitioner is the Regional Director of the Sixteenth Region of the Board, an agency of the United States, and filed the petition herein for and on behalf of the Board.

2. Jurisdiction of this proceeding is conferred upon this Court by Section 10(j) of the Act.

3. On November 2, 1971, the International Union, United Automobile, Aerospace and Agricultural Implement Workers, UAW, filed charges with the Board and on January 25, 1972 said charges were amended to allege that Servis Equipment Company, hereinafter called the respondent, has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(a) (1) and (5) of the Act.

4. Respondent is a corporation duly organized under, and existing by virtue of, the laws of the State of Texas, maintaining an office and place of business in Dallas, Texas, hereinafter called its plant, where it is engaged in the business of manufacturing and distributing agricultural implements and machinery. During the past year the respondent, in the course and conduct of its business operations, sold and distributed at its plant in Dallas, Texas, products valued in excess of $100,000, of which products valued in excess of $50,000 were shipped directly to states of the United States other than the State of Texas.

5. The International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW, hereinafter called the union, is an unincorporated association and is an organization in which exployees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment and other terms and conditions of employment.

6. All production and maintenance employees, including truck drivers, excluding office clerical employees, technical employees, professional employees, guards and supervisors as defined by the Act, constitute a unit appropriate for collective bargaining with-

in the meaning of Section 9(b) of the Act.

7. On December 1, 1967, a majority of the employees of the respondent in the unit described above in paragraph 6 by a secret ballot election conducted under the supervision of the Regional Director for the Sixteenth Region of the National Labor Relations Board designated and selected the union as their representative for the purpose of collective bargaining with the respondent, and on March 28, 1968, the Board certified the union as the exclusive representative of the employees in said unit.

8. On September 15, 1971 the Company by its attorney, John Price, made the following written proposal Plaintiff's Exhibit 3 to the Union:

"Effective November 12, 1971 the Company proposes to raise wages 6.-5% across the board.

Effective January 1, 1972 the Company proposes to amend the pension plan in two ways:

1. Increase benefits 20% for all employees who make up to $6600.00 per year and with less increase for those making over $6600.00 graduated to approximately 16%.

2. Permitting voluntary contributions to the pension plan by individual employees."

9. The letter of September 15, 1971 contained the following concluding paragraph:

"This proposal is based upon the fact the present wage freeze is due to expire November 12, and upon the additional contingency the law will permit the action proposed."

10. Attorney Price met with Carl Tillery, International representative of the union on October 8 and 13, 1971. At the first meeting there was a discussion of problems. At the October 13th meeting, Tillery accepted the terms contained in the letter of September 15, 1971 and presented to Price an appendix to the then existing contract, Plaintiff's Exhibit 1. Said appendix contained the same contract terms as contained in the letter of September 15, 1971, but did not contain the last paragraph of the letter.

11. Tillery advised Price at the October 13th meeting that the proposal should be taken to the Wage Board for its approval.

12. Price refused to sign the tendered appendix.

13. Thereafter on November 15, 1971 without further negotiations the Company put into effect a 5.5% across the board wage increase.

14. By reason of the acts and conduct set forth above there is reasonable cause to believe that respondent has interfered with, restrained and coerced its employees, and is interfering with, restraining and coercing its employees in the exercise of their rights granted in Section 7 of the Act.

15. Union will suffer irreparable injury if there is further delay in signing the contract, the provisions of which with the exception of the matters set out in Appendix 3, are not here in controversy.

16. The remedial purposes of the Act to encourage bargaining would be frustrated unless temporary relief is granted.

17. Provisions of the contract herein involved were agreed upon prior to the promulgation of the Pay Board Rules effective as of November 14, 1971.

### Conclusions of Law

1. This Court has jurisdiction of the parties and of the subject matter of this proceeding under Section 10(j) of the Act and is empowered to grant injunctive relief.

2. The International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW, is a labor organization within the meaning of Section 2(5), 8(b) and 10(j) of the Act.

3. Respondent, Servis Equipment Company, is engaged in commerce

**1302**

within the meaning of Section 2(6) and (7) of the Act.

4. A valid contract was entered into between Company and Union on October 13, 1971 when Union accepted the terms of the September 15, 1971 proposal of Company.

5. The last paragraph of the letter of September 15, 1971 was not a part of the proposed contract, merely a statement that the contract was subject to any law then existing. The failure of Union to include this paragraph in its Appendix had no effect on its acceptance since all contracts are subject to the then existing law.

6. There is reasonable cause to believe that refusal by Company to sign the contract of October 13, 1971 is an unfair labor practice within the meaning of Section 8(a) (1) and (5) of the Act and that unless an injunction is issued such refusal will continue.

7. There is reasonable cause to believe that Company's effectuating an 5.-5% across the board wage increase on November 15, 1971 without further negotiation was an unfair labor practice within the meaning of Section 8(a) (1) and (5) of the Act and that unless an injunction is issued such action will continue.

8. There is reasonable cause to believe the Company is violating Section 8(b) (3) of the Act by refusing to bargain in good faith in that it failed to sign the contract of October 13, 1971 and a pay increase was put into effect without negotiation.

9. The Pay Board established pursuant to the Economic Stabilization Act of 1970 has the authority to determine whether wage increases provided for by collective contracts are excessive within the meaning of the Economic Stabilization Act.

10. Under the rules of the Pay Board it is not a violation for the Company and Union to bargain for, contract for, or agree to a wage increase in excess of the maximum permissible annual aggregate wage increase. Federal Register Vol. 36 No. 252, December 31, 1971. Sec. 201.17.

11. The Pay Board rules provide further, "Existing contracts and pay practices will be allowed to operate according to their terms except that specific contracts or pay practices are subject to review when challenged by a party at interest—to determine whether any increase is unreasonably inconsistent with the criteria established by the Board." Federal Register Vol. 36 No. 220. Sec. 201.14 Nov. 13, 1971.

12. Injunctive relief is just and proper since under the circumstances the remedial portions of the Act would be frustrated unless temporary relief is granted.

13. This Court has jurisdiction under the authority of Section 10(j) of the National Labor Relations Act to issue an injunction to preserve the status quo as it existed on October 13, 1971 at the time the proposal of Company was accepted by Union.

14. It is appropriate, just and proper in order to preserve the issues for orderly determination as provided in the Act that pending the final disposition of the matters herein involved pending before the Board the Company be ordered to execute, deliver and give effect to the collective bargaining agreement as of October 13, 1971 and to put into effect the wage increase to the extent permitted by the Board so as to effectuate the policy of the Act in encouraging the practice of collective bargaining.

It is therefore ordered, adjudged and decreed that pending the final disposition of the matters involved pending before the National Labor Relations Board Respondent, Servis Equipment Company forthwith upon request, sign and execute the contract to which both Respondent and Union agreed effective October 13, 1971.

It is further ordered, adjudged and decreed that Respondent, Servis Equipment Company make the employees

whole for loss of earnings they would have received under the contract as of October 13, 1972. This order is effective immediately unless within 15 days from this date one of the parties makes application to the Pay Board for a review in which case only such amount is to be paid as is permitted by a determination of the Board.